1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10  ROBERT CAMPO,

11          Petitioner,                No. 2:11-cv-1622 LKK DAD P

12     vs.

13  G. SWARTHOUT,

14          Respondent.                FINDINGS AND RECOMMENDATIONS

15  _____/

16          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17  corpus pursuant to 28 U.S.C. § 2254.  Petitioner is serving a sentence of twenty-seven years to

18  life in state prison following his 1985 conviction in the Fresno County Superior Court for

19  kidnapping and first degree murder with use of a firearm.

20          In his pending federal habeas petition, petitioner challenges a May 5, 2009

21  decision by the California Board of Parole Hearings (Board) finding him unsuitable for parole

22  and deferring his next parole consideration hearing for five years.  This matter is before the court

23  on respondent's motion to dismiss the petition pursuant to Rule 4 of the Rules Governing Section

24  2254 Cases in the United States District Courts (hereinafter "Habeas Rules").  Petitioner has

25  opposed the motion.

26  /////

1

1   Rule 4 of the Habeas Rules requires the court to summarily dismiss a habeas

2   petition "[i]f it plainly appears from the petition and any exhibits annexed to it that the petitioner

3   is not entitled to relief in the district court."   A motion for summary dismissal pursuant to Rule 4

4   of the Habeas Rules is an appropriate motion in habeas proceedings.  See O'Bremski v. Maass,

5   915 F.2d 418, 420 (9th Cir. 1990).

6                                    PETITIONER'S CLAIMS

7   I.  Due Process

8         In his first three claims for relief, petitioner contends that the Board's 2009

9   decision to deny him parole for a period of five years violated his federal constitutional right to

10   due process of law because:  the Board unfairly relied on the unchanging circumstance of his

11   commitment offense and other pre-offense factors to deny him parole; the Board's decision was

12   arbitrary and capricious; and there was insufficient evidence in the record before the Board that

13   petitioner would pose a current danger to society if released from prison.  (Pet. (Doc. No. 1), at 4-

14   5.)

15         Respondent counters by arguing that petitioner's due process claim is not

16   cognizable in this federal habeas corpus proceeding and should therefore be dismissed.  (Mot. to

17   Dismiss (Doc. No. 11) at 2-3.)

18         The Due Process Clause of the Fourteenth Amendment prohibits state action that

19   deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

20   due process violation must first demonstrate that he was deprived of a liberty or property interest

21   protected by the Due Process Clause and then show that the procedures attendant upon the

22   deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

23   490 U.S. 454, 459-60 (1989).

24         A protected liberty interest may arise from either the Due Process Clause of the

25   United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

26   expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

2

1  221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

2  Constitution does not, of its own force, create a protected liberty interest in a parole date, even

3  one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

4  Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

5  person to be conditionally released before the expiration of a valid sentence.").  However, a

6  state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release

7  will be granted" when or unless certain designated findings are made, and thereby gives rise to a

8  constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

9  California's parole scheme gives rise to a liberty interest in parole protected by the

10  federal Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th

11  Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v.

12  Cooke, 562 U.S. ___ , ___, 131 S. Ct. 859, 861-62 (2011) (finding the Ninth Circuit's holding in

13  this regard to be a reasonable application of Supreme Court authority); Pearson v. Muntz, 639

14  F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout v.] Cooke did not disturb our precedent that

15  California law creates a liberty interest in parole.")  In California, a prisoner is entitled to release

16  on parole unless there is "some evidence" of his or her current dangerousness.  In re Lawrence,

17  44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

18  In Cooke, the Supreme Court reviewed two cases in which California prisoners

19  were denied parole - in one case by the Board, and in the other by the Governor after the Board

20  had granted parole.  Cooke, 131 S. Ct. at 860-61.  The Supreme Court noted that when state law

21  creates a liberty interest, the Due Process Clause of the Fourteenth Amendment requires fair

22  procedures, "and federal courts will review the application of those constitutionally required

23  procedures."  Id. at 862.  The Court concluded that in the parole context, however, "the

24  procedures required are minimal" and that the "Constitution does not require more" than "an

25  opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

26  Id. (citing Greenholtz, 442 U.S. at 16).  The Supreme Court therefore rejected Ninth Circuit

decisions that went beyond these minimal procedural requirements and "reviewed the state

courts' decisions on the merits and concluded that they had unreasonably determined the facts in

light of the evidence." Cooke, 131 S. Ct. at 862.  In particular, the Supreme Court rejected the

application of the "some evidence" standard to parole decisions by the California courts as a

component of the federal due process standard.  Id. at 862-63.  See also Pearson, 639 F.3d at

1191.[1]

Here, it is plain from the record in this case that petitioner was present at his 2009

parole consideration hearing, that he participated in that hearing, and that he was provided with

the reasons for the Board's decision to deny him parole.  (Doc. No. 11-1 at 5-119.)  According to

the United States Supreme Court, the federal due process clause requires no more.  Petitioner is

therefore not entitled to federal habeas relief with respect to his due process claim.

## II.  Ex Post Facto Violation

Petitioner's next claim for relief is that application of the provisions of California

Proposition 9, also known as Marsy's Law, at his 2009 parole hearing violated the Ex Post Facto

Clause of the United States Constitution because it increased the deferral period for his next

parole suitability hearing and resulted in his serving a longer prison sentence.  (Pet. at 5.)

In moving to dismiss the pending petition, respondent argues that petitioner's Ex

Post Facto claim is not cognizable in this habeas corpus proceeding because it presents the same

issue that is pending before the court in the class action case of Gilman v. Fisher, 05-0830 LKK

GGH P (E.D. Cal.).  (Mot. to Dismiss at 3-4.)

/////

---

[1]  In its per curiam opinion the Supreme Court did not acknowledge that for twenty-four years the Ninth Circuit had consistently held that in order to comport with due process a state parole board's decision to deny parole had to be supported by "some evidence," as defined in Superintendent v. Hill, 472 U.S. 445 (1985), that bore some indicia of reliability.  See Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) ("In Jancsek . . . we held that the process that is due in the parole rescission setting is the same as the Supreme Court outlined in Superintendent v. Hill . . . .")

1    The Constitution provides that "No State shall . . . pass any . . . ex post facto

2 Law." U.S. Const. art. I, § 10.  A law violates the Ex Post Facto Clause of the United States

3 Constitution if it:  (1) punishes as criminal an act that was not criminal when it was committed;

4 (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a

5 person of a defense available at the time the crime was committed.  Collins v. Youngblood, 497

6 U.S. 37, 52 (1990).  The Ex Post Facto Clause "is aimed at laws that retroactively alter the

7 definition of crimes or increase the punishment for criminal acts."  Himes v. Thompson, 336

8 F.3d 848, 854 (9th Cir. 2003) (quoting Souch v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002)).

9 See also Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995).  The Ex Post Facto Clause is

10 also violated if:  (1) state regulations have been applied retroactively; and (2) the new regulations

11 have created a "sufficient risk" of increasing the punishment attached to the crimes.  Himes, 336

12 F.3d at 854.  The retroactive application of a change in state parole procedures violates ex post

13 facto only if there exists a "significant risk" that such application will increase the punishment

14 for the crime.  See Garner v. Jones, 529 U.S. 244, 259 (2000).

15    Petitioner was convicted and sentenced to twenty-seven years to life in prison with

16 the possibility of parole in 1985, twenty-three years prior to the passage of Marsy's Law in

17 November 2008.  Marsy's Law amended California law governing parole deferral periods.  See

18 Gilman v. Davis, 690 F. Supp.2d 1105, 1109–13 (E.D. Cal. 2010) (granting plaintiffs' motion for

19 a preliminary injunction enjoining enforcement of Marsy's Law, to the extent it amended former

20 California Penal Code § 3041.5(b)(2)(A)), rev'd sub nom. Gilman v. Schwarzenegger, 638 F.3d

21 1101 (9th Cir. 2011).  Prior to the enactment of Marsy's Law, the Board deferred subsequent

22 parole suitability hearings with respect to indeterminately-sentenced inmates for one year unless

23 the Board determined it was unreasonable to expect that parole could be granted the following

24 year.  If that determination was made, the Board could then defer the inmate's subsequent parole

25 suitability hearing for up to five years.  See Cal. Pen. Code § 3041.5(b)(2) (2008).  Marsy's Law,

26 which applied to petitioner at the time of his 2009 parole suitability hearing, amended §

1 | 3041.5(b)(2) to impose a minimum deferral period for subsequent parole suitability hearings of

2 | three years, and to authorize the Board's deferral of a subsequent parole hearing for up to seven,

3 | ten, or fifteen years.  Id. § 3041.5(b)(3) (2010).

4 | One of the claims presented by the plaintiffs in the class action Gilman case is that

5 | the amendments to § 3041.5(b)(2) regarding parole deferral periods imposed under Marsy's Law

6 | violates the Ex Post Facto Clause because "when applied retroactively, [they] create a significant

7 | risk of increasing the measure of punishment attached to the original crime." (Gilman, Doc. No.

8 | 154–1 at 13 (Fourth Amended/Supplemental Complaint), Doc. No. 183 (Mar. 4, 2009 Order

9 | granting plaintiffs' motion for leave to file a Fourth Amended/Supplemental Complaint.))  With

10 | respect to this Ex Post Facto claim, the class in Gilman is comprised of "all California state

11 | prisoners who have been sentenced to a life term with possibility of parole for an offense that

12 | occurred before November 4, 2008." (Gilman, Doc. No. 340 (Apr. 25, 2011 Order amending

13 | definition of class.))  The Gilman plaintiffs seek declaratory and injunctive relief, including a

14 | permanent injunction enjoining the Board from enforcing the amendments to § 3041.5(b) enacted

15 | by Marsy's Law and requiring that the Board conduct a new parole consideration hearing for

16 | each member of the class.  (Gilman, Doc. No. 154–1 (Fourth Amended/Supplemental Complaint)

17 | at 14.)

18 | In a class action for injunctive relief certified under Rule 23(b)(2) of the Federal

19 | Rules of Civil Procedure a court may, but is not required to, permit members to opt-out of the

20 | suit.  Crawford v. Honig, 37 F.3d 485, 487 n.2 (9th Cir. 1994).  In certifying the Gilman class,

21 | the district court found that the plaintiffs satisfied the requirement of Rules 23(a) and 23(b)(2)

22 | that "the party opposing the class has acted or refused to act on grounds that apply generally to

23 | the class, so that final injunctive relief or corresponding declaratory relief is appropriate

24 | respecting the class as a whole." (See Gilman, Doc. No. 182 (Mar. 4, 2009 Order certifying class

25 | pursuant to Fed. R. Civ. P. 23(b)(2), Doc. No. 257 (June 3, 2010 Ninth Circuit Court of Appeals

26 | Memorandum affirming district court's order certifying class.))  According to the district court in

1   Gilman, the members of the class "may not maintain a separate, individual suit for equitable

2   relief involving the same subject matter of the class action." (Gilman, Doc. No. 296 (Dec.10,

3   2010 Order) at 2; see also Doc. No. 278 (Oct. 1, 2010 Order), Doc. No. 276 (Sept. 28, 2010

4   Order), Doc. No. 274 (Sept. 23, 2010 Order.))  There is no evidence before the court at this time

5   in this habeas action suggesting that petitioner has requested permission to opt out of the Gilman

6   class action lawsuit.

7          Rather, petitioner alleges he is a California state prisoner who was sentenced to a

8   life term in state prison with the possibility of parole for an offense that occurred before

9   November 4, 2008.  (Pet. at 1.)  Accepting petitioner's allegations as true, he is a member of the

10   Gilman class.  Similar to the plaintiffs in Gilman, petitioner in this habeas action alleges that

11   Marsy's Law violates the Ex Post Facto Clause because, when applied retroactively, it creates a

12   risk of increasing the length of his punishment.  Petitioner asks the court to issue a writ of habeas

13   corpus.  However, even if the court found that the Board's 2009 five-year deferral of petitioner's

14   next parole suitability hearing violated the Ex Post Facto Clause, it would not entitle petitioner to

15   release on parole.  Because his Ex Post Facto claim concerns only the timing of petitioner's next

16   parole suitability hearing, success on that claim would not necessarily result in determinations

17   that petitioner is suitable for release from custody on parole.  Rather, petitioner's equitable relief

18   would be limited to an order directing the Board to conduct a new parole suitability hearing and

19   enjoining the Board from enforcing against petitioner any provisions of Marsy's Law found to be

20   unconstitutional.  This is the same relief petitioner would be entitled to as a member of the

21   pending Gilman class action.  (See Gilman, Doc. No. 154–1 (Fourth Amended/Supplemental

22   Complaint) at 14.)

23          Therefore, it appears clear that petitioner's rights will be fully protected by his

24   participation as a class member in the Gilman case.  Accordingly, the court recommends that

25   petitioner's Ex Post Facto claim presented by him in this federal habeas action be dismissed

26   without prejudice to any relief that may be available to him as a member of the Gilman class.

7

1    See Crawford v. Bell, 599 F.2d 890, 892 (9th Cir. 1979) ("A court may choose not to exercise its

2    jurisdiction when another court having jurisdiction over the same matter has entertained it and

3    can achieve the same result."); see also McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991)

4    ("Individual suits for injunctive and equitable relief from alleged unconstitutional prison

5    conditions cannot be brought where there is an existing class action."); Gillespie v. Crawford,

6    858 F.2d 1101, 1103 (5th Cir.1988) ("To allow individual suits would interfere with the orderly

7    administration of the class action and risk inconsistent adjudications."); Johnson v. Parole Board,

8    No. CV 12–3756–GHK (CW), 2012 WL 3104867, at * (C.D. Cal. June 26, 2012)

9    (recommending dismissal of petitioner's Ex Post Facto challenge to Proposition 9 "without

10   prejudice in light of the ongoing Gilman class action.") (and cases cited therein), report and

11   recommendation adopted by 2012 WL 3104863 (C.D. Cal. July 25, 2012).[2]

12   III.  Bill of Attainder

13         Petitioner's final claim is that Marsy's Law constitutes an unlawful Bill of

14   Attainder because its increase in the minimum deferral period for subsequent parole suitability

15   hearings constitutes "harsher penalties of punishment" and a "defacto increase" in his sentence.

16   (Pet. at 5.)

17         The United States Constitution provides that "No Bill of Attainder . . . shall be

18   passed." U.S. Const. art. 1, §9, cl. 3.  A bill of attainder involves a statute imposing punishment

19   without the benefit of trial.  Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 468 (1977).

20   Three requirements must be met to establish a violation of the Bill of Attainder Clause:  it must

21   single out an identifiable group, inflict punishment, and dispense with a judicial trial.  Id.;

22   Selective Serv. Sys. v. Minnesota Pub. Interest Research Group, 468 U.S. 841, 846-47 (1984).

23   Three inquiries determine whether a statute "inflicts punishment:"  (1) whether the challenged

24

25         [2] In his opposition to respondent's motion to dismiss, petitioner states that he "will
concede to the dismissal of his Marcy's law Claim upon the Court notifying petitioner that he is a
26   legal binding participant to the Gilman Class Action."  (Doc. No. 14 at 9.)

8

1   statute falls within the historical meaning of legislative punishment; (2) whether the statute,

2   "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further

3   nonpunitive legislative purposes;" and (3) whether the legislative record "evinces a congressional

4   intent to punish." United States v. Lujan, 504 F.3d 1003, 1006 (9th Cir. 2007) (quoting Selective

5   Serv. Sys., 468 U.S. at 852).

6           Given these requirements and relevant factors for consideration, Marsy's Law

7   does not qualify as a bill of attainder.  Petitioner has not alleged any facts which could establish

8   he is subject to a bill of attainder, nor has he cited any decision of the United States Supreme

9   Court supporting his claim that Proposition 9 constitutes additional "punishment" for his crime.

10   Marsy's Law has no effect on the indeterminate life sentence petitioner received after his

11   conviction for second degree murder.  His sentence remains the same regardless of when his

12   future parole suitability hearings are held.  For these reasons, petitioner is not entitled to federal

13   habeas relief with respect to his claim that Marsy's Law constitutes an unlawful Bill of

14   Attainder.[3]

15                                    CONCLUSION

16           In accordance with the above, IT IS HEREBY RECOMMENDED that:

17           1.  Respondents' September 6, 2011 motion to dismiss (Doc. No. 11) be granted;

18           2.  Federal habeas relief be denied as to petitioner's due process claim and his

19   claim that Marsy's Law constitutes a Bill of Attainder; and

20           3.  Petitioner's claim that his rights under the Ex Post Facto Clause were violated

21   by the Board's 2009 decision to defer his next parole consideration for a period of five years be

22   dismissed without prejudice to any relief that may be available to petitioner as a member of the

23   class in Gilman v. Fisher, 05–0830 LKK GGH P.

24

---

25           [3]  In light of the recommended dismissal of this action on the grounds set forth above, the
     undersigned will not reach respondent's argument that petitioner's claims should be dismissed
26   because his allegations are vague and conclusory.  See Mot. to Dismiss at 4-5.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: September 19, 2012.

Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
campo1622.mtd

10